IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| NOVA MOLECULAR TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-2039-STA |
| PENN SPECIALTY CHEMICALS, INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Penn Specialty Chemicals, Inc.'s ("Defendant") Motion to Dismiss (D.E. # 5) filed on February 18, 2008. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

Plaintiff Nova Molecular Technologies, Inc. ("Plaintiff") and Defendant began exploring the sale of Defendant's business assets to Plaintiff in April 2007. To assist in its efforts, Defendant retained a professional advisor who contacted Plaintiff to gauge Plaintiff's interests in a potential transaction. The parties entered into a confidentiality agreement on April 24, 2007.[1] Over the following months, the parties conducted their due diligence and agreed on a purchase price. On September 25, 2007, the parties signed a Letter of Intent ("LOI") stating the parties'

---

[1] LOI, ¶ 10.

intention to negotiate a final agreement for Plaintiff to purchase the assets of Defendant.[2] The LOI set November 2, 2007, as a deadline for the execution of the purchase agreement, and a closing of the transaction by November 12, 2007. By letter dated October 31, 2007, these dates were extended by the parties to November 19, 2007, and November 30, 2007, respectively.[3]

The parties agree that the LOI did not bind either Plaintiff to buy or Defendant to sell its assets. The LOI concluded with the following:

> This proposal is intended as a commitment on behalf of Buyer and Penn to negotiate in good faith toward a mutually acceptable definitive asset purchase agreement incorporating the terms hereof.. EXCEPT FOR THE OBLIGATIONS SET FORTH IN PARAGRAPHS 4, 5, 6, 7, 8, 9 AND 10 HEREOF, WHICH ARE INTENDED TO BE LEGALLY BINDING, THIS LETTER OF INTENT IS NOT INTENDED TO BE A LEGALLY BINDING DOCUMENT (formatting in original).[4]

The LOI went on to give Plaintiff the right to discontinue its negotiations "at any time and for any reason whatsoever without creating liability or responsibility to Penn."[5]

The enumerated paragraphs containing the legally binding terms of the LOI set forth several duties each party agreed to undertake. Among those, Plaintiff alleges that Defendant has violated paragraphs 4 and 7. Paragraph 4 titled "<u>Exclusivity</u>" ("the no-shop provision") bound Defendant to refrain from negotiating with any third party for the "merger, consolidation, share exchange, sale of all or substantially all" of Defendant's assets until November 2, 2007.[6]

---

[2] The LOI was signed by Joseph A. Chiaroni, President of Nova Molecular Technologies, Inc., on behalf of Plaintiff, and Michael W. Neff, Vice-president of Finance and CFO for Penn Specialty Chemical, Inc., on behalf of Defendant.

[3] LOI Amendment, October 31, 2007.

[4] LOI, p. 9.

[5] *Id*.

[6] LOI, ¶ 4.

Notably, this period of exclusivity was also extended until November 30, 2007, at the same time the other aforementioned deadlines were extended in the letter of October 31, 2007.[7] Paragraph 7 titled "Conduct of the Business" ("ordinary course provision") bound Defendant generally to operate "in substantially the manner it has heretofore conducted business."[8] Defendant agreed not to buy or sell any material assets in an amount exceeding $100,000, to pay any dividend or distribution to its shareholders, or to change the compensation of any personnel in any amount without the prior written consent of Plaintiff.[9]

According to Plaintiff, the parties had entered into an Asset Purchase Agreement on or about November 26, 2007, that Defendant would sell its assets to Plaintiff for $7,100,000, with a closing of the transaction by December 31, 2007. On December 10, 2007, the professional advisor representing Defendant informed Plaintiff that Defendant had another offer from a third party for the purchase of Defendant's assets.[10] Plaintiff filed suit on January 23, 2008. In its Complaint, Plaintiff alleges that Defendant's negotiation of a separate deal with the unnamed third party violated the no-shop and ordinary course provisions of the LOI.[11] Plaintiff further states that Defendant's advisor disclosed to Plaintiff that Defendant had to obtain new financing

---

[7] LOI Amendment.

[8] LOI, ¶ 7.

[9] *Id*. Paragraph 7 contains two exceptions to this ordinary course provision, which do not appear to be relevant to the Motion before the Court.

[10] Defendant offers no elaboration on the collapse of the negotiations other than to say, "During the negotiation phase of a potential asset sale, and prior to entering into a definitive contract to sell, Penn determined that it would not proceed with the sale." Def.'s Mem. in Supp., 9.

[11] Compl. ¶ 15.

from its banks in order to accept the third-party's offer. These communications with its banks according to Plaintiff also violated the no-shop and ordinary course provisions. As for relief, Plaintiff has demanded specific enforcement of the Asset Purchase Agreement or in the alternative damages for the breach of the LOI.[12]

Defendant has filed the instant Motion to Dismiss for Plaintiff's failure to state a claim upon which relief may be granted. First, Defendant contends that there is not a valid, enforceable contract, which would entitle Plaintiff to any relief. Defendant points to the language of the LOI which anticipated a subsequent "Definitive Agreement." The parties never concluded such an agreement, and so there is no contract. Defendant has cited in support a series of Tennessee cases for the proposition that a letter of intent anticipating a final agreement remains unenforceable as a contract without a consummating agreement. Second, Defendant argues that there was no agreement for the sale of Defendant's assets that satisfies the Statute of Frauds. Defendant characterizes the parties' "draft contract" as an oral agreement.[13] Because the agreement involves the sale of $7,100,000 in assets, it fails to satisfy the Statute of Frauds' requirement that contracts for the sale of personal property in excess of $5,000 must be in writing and signed by the party against whom enforcement is sought. Finally, Defendant contends that the remedy of specific performance is not available because there is no valid, enforceable contract.[14] While Defendant acknowledges that the LOI is a contract, there is no

---

[12] Compl. ¶¶ 18, 19.

[13] The Court is left to assume that the "draft contract" to which Defendant refers is the same document Plaintiff has dubbed the "Asset Purchase Agreement." Defendant later referred to this document as a "draft asset purchase agreement." Def.'s Mem. in Supp. 7.

[14] Def.'s Mem. in Supp. 8.

mutuality of remedy under the terms of the LOI.  The LOI permitted Plaintiff but not Defendant to abandon the negotiations at any point prior to the completion of a final purchase contract.  In other words, Defendant had no right under the terms of the LOI to seek specific performance against Plaintiff and force Plaintiff to buy Defendant's assets.  As a result, specific performance is unavailable to Plaintiff because of the lack of mutuality of remedy in the LOI.

Plaintiff has responded in opposition to Defendant's 12(b)(6) Motion.  Although Plaintiff grants that many of the terms of the LOI were not binding, Plaintiff does point out that the parties agreed to be bound by specific terms of the LOI including the no-shop and ordinary course provisions.  Plaintiff has alleged that Defendant negotiated the new deal and entered into financing discussions with its banks all in violation of the no-shop and ordinary course provisions.  Therefore, Plaintiff has sufficiently pled that Defendant violated those enforceable provisions of the LOI.  In addition Plaintiff states its belief that Defendant's new borrowing was obtained with the expectation that the third party would purchase the banks' positions and use those positions to control Defendant's assets.  Plaintiff also believes that this transaction is intended to become, "a merger, share exchange, sale of all of (sic) substantially all of (Defendant)'s assets, or a comparable acquisition transaction involving (Defendant) or with respect to (Defendant)'s capital stock."  Taken together, Plaintiff avers that it has stated a claim for breach of contract.

As for the formation of a contract, Plaintiff insists that the no-shop and ordinary course of business provisions in the LOI can be binding even if they are contained in a letter of intent.  Plaintiff argues that the remedy of specific performance is available due to the fact that the parties contemplated the sale of real property assets, and the award of damages would not

5

adequately compensate Plaintiff.  Plaintiff also asks the Court to enforce the specific terms of the Asset Purchase Agreement "as a template to fashion an appropriate" remedy for the violation of the LOI.  Plaintiff argues that these issues should be dealt with at the remedy stage, not at this early phase of the litigation.

Finally, Plaintiff states that the Statute of Frauds does not prevent enforcement of the LOI, which is the basis for Plaintiff's breach of contract claims, not the Asset Purchase Agreement.  Plaintiff goes further and argues that the Court may consider the Asset Purchase Agreement and other documents to satisfy the Statute of Frauds at a later stage of the litigation but not when considering a motion to dismiss.  Nor should the Court deny Plaintiff enforcement under the mutuality of remedies rule.  According to Plaintiff, the mutuality of remedy rule is more applicable to real property transactions where there are fractional ownership interests in the real property.  For these reasons, Plaintiff urges the Court to deny the Motion to Dismiss.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule

12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[15] "A court may dismiss a [claim under Rule 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[16] "The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[17] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[18] The Supreme Court has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face."[19] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[20]

## ANALYSIS

In order to survive the 12(b)(6) Motion to Dismiss, Plaintiff's Complaint must simply state a claim for breach of contract that is plausible on its face. In deciding what substantive law

---

[15] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[16] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[17] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[18] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[19] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

[20] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

applies, the Court must first look to the forum state's choice of law statute.[21] The parties in this case agree that Tennessee substantive law governs the issues presented here. Under Tennessee law, courts determining the terms of a contract are to ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the instrument.[22] If the terms used in an instrument are ambiguous, the court must then resort to rules of construction. Terms are not ambiguous, however, merely because the parties disagree as to the interpretation of a given clause.[23] "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one."[24]

## I. Intent to be Bound by the LOI

Applying these standard principles of contract interpretation, the Court finds that the LOI signed by both parties in this case is unambiguous. It is apparent to the Court that the parties intended for several of the provisions of the LOI, including the no-shop and ordinary course provisions, to be legally binding. Defendant is correct in stating that, properly construed, the LOI anticipated the negotiation and execution of a definitive purchase agreement. According to Defendant then, the LOI itself did not constitute a final, enforceable contract for the sale of Defendant's business assets. However, this is not to say that the LOI amounted to no contract at all between the parties. While the LOI did assume further negotiations and more definite terms

---

[21] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975).

[22] *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn.1999).

[23] *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn.Ct.App.1994).

[24] *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975).

that were to be worked out at a later time, the LOI included certain terms including the no-shop and ordinary course provisions by which the parties explicitly agreed to be bound. The parties went so far as to spell out that intent with all capital letters and by enumerating the specific paragraphs of the LOI which were to be binding. Defendant even concedes that the LOI was a contract between the parties.[25] As a matter of law, the Court concludes that the LOI bound the parties to the terms set forth in paragraphs 4 through 10 of the LOI, including the no-shop and ordinary course provisions.

Defendant has cited case law from Tennessee for the proposition that a letter of intent does not establish the existence of a contract for the sale of Defendant's business assets where the parties anticipate further negotiations and a final agreement to complete a transaction. In *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006), two parties entered into a letter of intent to negotiate the purchase of the business assets of a janitorial service. The letter of intent assumed the need for further negotiation to work out the terms of the transaction and a final purchase agreement. The Tennessee Court of Appeals ruled that the letter of intent did not constitute a contract for the purchase of the assets because the letter was "riddled with terms indicating the parties intended to 'consider' a 'proposed purchase' or 'contemplated transaction' in anticipation of a final agreement between the parties."[26] Defendant also cites *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12

---

[25] Def.'s Mem. in Supp. 7.

[26] *Barnes & Robinson Co.*, 195 S.W.3d at 642. The Court also notes that the letter of intent in *Barnes and Robinson Co.* called for a purchase price of $200,000, but by the end of negotiations, the seller had raised its price to $1.25 million. In the case at bar, the LOI stated a purchase price of $7.1 million. According to the Complaint (¶ 10), the written Asset Purchase Agreement included the same $7.1 million purchase price, presumably for the same assets.

(Tenn. Ct. App. 1998) for the similar principle that preliminary negotiations, and not a final agreement, will not create a contract.

These cases are clearly distinguishable from the facts presented in the case at bar. In *Barnes and Robinson Co.* and *Engenius Entertainment*, the Tennessee Court of Appeals declined to enforce the terms of a letter of intent and an invitation for proposals as enforceable contracts.[27] Here in contrast, Plaintiff has alleged that Defendant breached terms of the LOI, which were binding and enforceable apart from the anticipated definitive asset purchase agreement. The LOI in this case contained terms which were clearly and unambiguously intended to be legally binding on the parties. It is true that like the letter of intent in *Barnes and Robinson Co.*, the LOI established "the framework for negotiations" and even contained specific terms of the negotiations such as the purchase price and the assets to be purchased. Still the LOI in this matter went beyond a non-binding "framework" and created legally binding duties for each party to undertake during the course of negotiations. In particular, Defendant contracted in the no-shop provision of the LOI to "refrain from entering into any discussions or negotiations with any third party" thus giving Plaintiff the exclusive right to negotiate the purchase of Defendant's business assets until November 30, 2007.[28] Likewise, the ordinary course provision required

---

[27] For the same reasons, the Court finds the case law cited in support by Plaintiff also inapposite. Plaintiff points to *APCO Amusement Co. v. Wilkins Family Rest.of Am., Inc.*, 673 S.W.2d 523, 527 (Tenn. Ct. App. 1984) for the idea that designating a document as a "letter of intent" does not automatically strip the document of its binding effect.

[28] The no-shop provision created two conditions which might relieve Defendant of this obligation: (1) that Plaintiff failed to provide Defendant with a financing commitment to consummate the sale by November 30, 2007, or (2) that Plaintiff delivered to Defendant a "Definitive Agreement, Consulting Agreement, or Escrow Agreement that materially differ(red) from the terms and conditions" of the LOI. Defendant has not argued that either condition applies. Therefore, the Court has no reason to conclude that the no-shop provision did not bind

Defendant to continue to "operate its business in the ordinary course of business in substantially the manner it has heretofore conducted business." It does not appear that any conditions attached to Defendant's duty to be bound by this provision. Plaintiff has alleged that Defendant's efforts to obtain financing from its banks without prior written consent would constitute a breach of the ordinary course provision.[29]

Taking the factual allegations of the complaint as true and construing all of the allegations in the light most favorable to the non-moving party, the Court finds that the no-shop and ordinary course provisions were contractually binding on Defendant up to and including November 30, 2007. Plaintiff has plausibly alleged that Defendant breached both provisions by virtue of negotiating a new deal with an unidentified third party as well as seeking additional financing from its lenders. As Plaintiff alleges that Defendant's conduct came to light on December 10, 2007, it is also plausible that Defendant was negotiating its third party deal and obtaining the additional financing at times prior to November 30, 2007, while the no-shop and ordinary course provisions were still in effect. Therefore, the Court finds that Plaintiff has stated a claim for breach of contract as to the no-shop and ordinary course provisions.

## II. Possible Remedies

Defendant's Motion to Dismiss focuses on the fact that the LOI imposed no duty on

---

Defendant at all times during the negotiations up to and including November 30, 2007.

[29] This provision found at paragraph 7 of the LOI includes many specific examples of the types of transactions which would fall outside the ordinary course of business and require the prior written consent of Plaintiff. Seeking financing from a financial institution is not listed among these prohibited transactions. However, at this stage of the litigation, it is plausible that Defendant's actions did constitute a material breach.

11

Defendant to follow through with the proposed transaction and sell its business assets to Plaintiff. This contention is clearly correct. Just as the LOI clearly bound the parties with respect to the no-shop and ordinary course provisions (among others), the LOI was equally clear that the remainder of the document was not intended to be legally binding. Among the terms mentioned in the LOI but outside the binding provisions of the LOI were (1) the assets to be purchased, (2) the liabilities to be assumed by Plaintiff, (3) the purchase price for the assets excluding the assumed liabilities, (4) a series of conditions to Plaintiff's obligations to close the transaction, and (5) assurances for senior management employed by Defendant.[30] Because these terms of the LOI were unambiguous, no contract was formed as to any of these terms between the parties by virtue of signing the LOI. Therefore, if Plaintiff's Complaint was seeking remedies for the breach of those terms under the LOI, Plaintiff would have failed to state a claim upon which relief may be granted.

However, it appears to the Court that Plaintiff's theory of the case is not that the Court should specifically enforce the terms of the LOI because the LOI was an enforceable contract for the sale of Defendant's business assets. On the contrary, the Complaint clearly states that Plaintiff seeks relief for Defendant's breach of the LOI.[31] The Court has already determined that

---

[30] Those assurances included the possibility of continued employment with Plaintiff after the acquisition was complete, or in the alternative a consulting agreement where senior managers would be retained as consultants at the same rate of pay for one year.

[31] The following paragraphs in the Complaint make this point clear:

15. Penn intentionally violated the no shop provision and the ordinary course provision of the letter of intent.

16. But for the violation of these provision of the letter of intent, Penn would have completed the transaction as set out in all material aspects in the

Plaintiff has adequately stated a claim for the breach of the no-shop and ordinary course provisions of the LOI. Defendant's objection appears to be that specific performance of the terms of the sale as found in the Asset Purchase Agreement/draft agreement is not available because that document cannot satisfy the requirements of the Statute of Frauds and there is no mutuality of remedy under the terms of the LOI.

Defendant's Motion raises the issue of whether Plaintiff has stated a claim upon which the relief of specific performance may be granted. While the Court is not convinced that specific performance will be available to Plaintiff even if Plaintiff successfully establishes that the LOI was breached, the Court need not resolve this issue at this time. First, this not the applicable standard for assessing a motion to dismiss pursuant to Rule 12(b)(6). The plain language of Rule 12 is broader: "the failure to state a claim upon which relief may be granted." Further the Court "may dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[32] A court may grant relief to which a party is entitled notwithstanding the party's failure to request it in his pleadings.[33] In this case it is clear that Plaintiff has prayed for relief other than specific performance. Plaintiff seeks specific

---

Asset Purchase Agreement.

> 17. The assets to be acquired by NOVA from Penn, including real property, are unique, and adequate relief cannot be afforded NOVA for Penn's breaches of these provisions of the letter of intent by an award of damages.

[32] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). *See also Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003); *Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994).

[33] *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists and Aerospace Workers,* 376 F.2d 337, 342 (6th Cir.1967), *aff'd,* 390 U.S. 557 (1968).

performance of the Asset Purchase Agreement because it "reflects all essential terms of the parties' agreement that Penn would sell its business assets to NOVA."[34] Plaintiff's Complaint also seeks the alternative relief of money damages "should the Court for any reason not award the equitable relief requested."[35] Therefore, the Court finds that Plaintiff has stated a claim for which relief of some kind may be granted.

Additionally, the Court is not yet in a position to address possible remedies, including specific performance, at this stage of the litigation. The LOI, the document upon which Plaintiff's claims rest, itself is silent as to the penalties for breach of its binding terms. Plaintiff has prayed for specific performance of the Asset Purchase Agreement, which Defendant contends was never binding upon the parties and would not satisfy the requirements of the statute of frauds. Further discovery and briefing is needed to develop this theory of the case. In fact, while both parties refer extensively to the Asset Purchase Agreement, neither has produced that document for the Court's review. As a result, the Court cannot completely evaluate whether it would be suitable to grant Plaintiff specific performance of its terms. In the context of a 12(b)(6) motion to dismiss, the Court declines to consider whether Plaintiff may be entitled to specific performance of the Asset Purchase Agreement. It is sufficient that Plaintiff has stated a claim upon which relief may be granted. Therefore, Defendant's Motion is denied as to this issue.

## CONCLUSION

Plaintiff has plausibly alleged that Defendant violated the binding no-shop and ordinary

---

[34] Compl. ¶ 18.

[35] *Id*. at ¶ 19.

course provisions of the LOI. The record is inadequate at this stage of the litigation to determine the kind of relief to which Plaintiff might be entitled for that breach. Therefore, Defendant's Motion to Dismiss is **DENIED**.

  **IT IS SO ORDERED.**

              **s/ S. Thomas Anderson**
              S. THOMAS ANDERSON
              UNITED STATES DISTRICT JUDGE

              Date: September 11th, 2008.