IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| NOVA MOLECULAR TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-2039-STA |
| PENN SPECIALTY CHEMICALS, INC., and PENNAKEM, LLC. | ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANT PENNAKEM'S MOTION TO DISMISS**

Before the Court is Defendant PennAkem's Motion to Dismiss (D.E. # 32) filed on December 23, 2008. Plaintiff responded in opposition (D.E. # 37) on January 21, 2009. Defendant filed its reply, and Plaintiff in turn has filed a sur-reply. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Plaintiff Nova Molecular Technologies, Inc. ("Plaintiff") and Defendant Penn Specialty Chemicals, Inc. ("Penn") began exploring the sale of Penn's business assets to Plaintiff in April 2007. To assist in its efforts, Penn retained a professional advisor who contacted Plaintiff to gauge Plaintiff's interests in a potential transaction. The parties entered into a confidentiality agreement on April 24, 2007.[1] Over the following months, the parties conducted their due diligence and agreed on a purchase price. On September 25, 2007, the parties signed a Letter of

---

[1] LOI, ¶ 10.

1

Intent ("LOI") stating the parties' intention to negotiate a final agreement for Plaintiff to purchase Penn's assets.[2] The LOI set November 2, 2007, as a deadline for the execution of the purchase agreement, and a closing of the transaction by November 12, 2007. By letter dated October 31, 2007, these dates were extended by the parties to November 19, 2007, and November 30, 2007, respectively.[3]

The parties agree that the LOI did not bind either Plaintiff to buy or Penn to sell its assets. The LOI concluded with the following:

> This proposal is intended as a commitment on behalf of Buyer and Penn to negotiate in good faith toward a mutually acceptable definitive asset purchase agreement incorporating the terms hereof.. EXCEPT FOR THE OBLIGATIONS SET FORTH IN PARAGRAPHS 4, 5, 6, 7, 8, 9 AND 10 HEREOF, WHICH ARE INTENDED TO BE LEGALLY BINDING, THIS LETTER OF INTENT IS NOT INTENDED TO BE A LEGALLY BINDING DOCUMENT (formatting in original).[4]

The LOI went on to give Plaintiff the right to discontinue its negotiations "at any time and for any reason whatsoever without creating liability or responsibility to Penn."[5]

The enumerated paragraphs containing the legally binding terms of the LOI set forth several duties each party agreed to undertake. Among those, Plaintiff alleges that Penn has violated paragraphs 4 and 7. Paragraph 4 titled "Exclusivity" ("the no-shop provision") bound Defendant to refrain from negotiating with any third party for the "merger, consolidation, share

---

[2] The LOI was signed by Joseph A. Chiaroni, President of Nova Molecular Technologies, Inc., on behalf of Plaintiff, and Michael W. Neff, Vice-president of Finance and CFO for Penn Specialty Chemical, Inc., on behalf of Defendant.

[3] LOI Amendment, October 31, 2007.

[4] LOI, p. 9.

[5] *Id.*

2

exchange, sale of all or substantially all" of Defendant's assets until November 2, 2007.[6]

Notably, this period of exclusivity was also extended until November 30, 2007, at the same time the other aforementioned deadlines were extended in the letter of October 31, 2007.[7] Paragraph 7 titled "Conduct of the Business" ("ordinary course provision") bound Penn generally to operate "in substantially the manner it has heretofore conducted business."[8] Penn agreed not to buy or sell any material assets in an amount exceeding $100,000, to pay any dividend or distribution to its shareholders, or to change the compensation of any personnel in any amount without the prior written consent of Plaintiff.[9]

According to Plaintiff, the parties had entered into an Asset Purchase Agreement on or about November 26, 2007, that Penn would sell its assets to Plaintiff for $7,100,000, with a closing of the transaction by December 31, 2007. On December 10, 2007, the professional advisor representing Penn informed Plaintiff that Penn had another offer from a third party for the purchase of Penn's assets.[10] Plaintiff filed this suit on January 23, 2008. In its original Complaint, Plaintiff alleged that Penn's negotiation of a separate deal with the unnamed third

---

[6] LOI, ¶ 4.

[7] LOI Amendment.

[8] LOI, ¶ 7.

[9] *Id.* Paragraph 7 contains two exceptions to this ordinary course provision, which do not appear to be relevant to the Motion before the Court.

[10] Penn offered no elaboration on the collapse of the negotiations other than to say, "During the negotiation phase of a potential asset sale, and prior to entering into a definitive contract to sell, Penn determined that it would not proceed with the sale." Penn's Mem. in Supp. of Mot. Dismiss, 9.

party violated the no-shop and ordinary course provisions of the LOI.[11] Plaintiff further stated that Penn's advisor disclosed to Plaintiff that Penn had to obtain new financing from its banks in order to accept the third-party's offer. These communications with its banks according to Plaintiff also violated the no-shop and ordinary course provisions. As for relief, Plaintiff demanded specific enforcement of the Asset Purchase Agreement or in the alternative damages for the breach of the LOI.[12]

Penn filed a motion to dismiss Plaintiff's complaint for failure to state a claim (D.E. # 5) on February 18, 2008. The Court denied that motion on September 11, 2008 (D.E. # 20). Applying standard Tennessee principles of contract interpretation, the Court concluded that the LOI signed by Plaintiff and Penn contained several provisions, including the no-shop and ordinary course provisions, which the parties intended to be legally binding during their negotiations. Therefore, the Court found that Plaintiff had stated a claim for breach of contract as to the no-shop and ordinary course provisions. As for Plaintiff's request for specific performance of the Asset Purchase Agreement, the Court stated, "While the Court is not convinced that specific performance will be available to Plaintiff even if Plaintiff successfully establishes that the LOI was breached, the Court need not resolve this issue at this time." The Court reasoned that Plaintiff had stated a claim for which relief of some kind might be granted. Plaintiff's Complaint sought specific performance or in the alternative money damages for Penn's breach of the LOI. The Court concluded that it was "not yet in a position to address possible remedies, including specific performance, at this stage of the litigation." The LOI did

---

[11] Compl. ¶ 15.

[12] Compl. ¶¶ 18, 19.

not provide penalties for breach of its binding terms. Furthermore, the Court found that additional discovery and briefing was needed to develop Plaintiff's theory for specific performance against Penn. Therefore, Penn's motion to dismiss was denied.

Plaintiff subsequently sought and was granted leave to amend its complaint to name PennAkem, LLC ("PennAkem"), a Tennessee limited liability company, as a defendant in this matter. Plaintiff's Amended Complaint identified PennAkem as a third-party who had purchased the assets of Penn after Plaintiff had filed its original Complaint. Am. Compl. ¶ 21. Plaintiff further alleged that PennAkem "is the successor-in-interest to Penn, and the Court cannot accord complete relief to Nova if PennAkem" was not made a party to the case. *Id*. at ¶ 22.

The Court notes that on December 28, 2008, Penn filed a suggestion of bankruptcy (D.E. # 35). Pursuant to the automatic stay provisions of the United States Bankruptcy Code, all action involving Penn has been stayed. However, Plaintiff has argued and PennAkem has not disputed that despite Penn's bankruptcy Plaintiff's claim against PennAkem may proceed.[13]

PennAkem has filed the instant Motion to Dismiss arguing that Plaintiff has failed to state a claim. PennAkem argues that under Delaware law it is not liable for the debts and liabilities of Penn. PennAkem contends that its purchase agreement with Penn expressly excluded an assumption of liabilities with respect to "the Nova Agreement and the pending litigation pertaining thereto." Thus, Plaintiff has failed to state a claim against PennAkem.

Plaintiff has responded that it has stated its claim against PennAkem as the successor-in-interest to Penn. Citing a treatise as well as authority from Illinois and Montana, Plaintiff argues

---

[13] Pl. Resp. to PennAkem's Mot. Dismiss, n.1 (citing *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314-15 (6th Cir. 2000); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993).

5

that a party purchasing property with notice "that the grantor has contracted to convey it to another may be compelled to perform the contract in the same manner and to the same extent as his or her grantor would have been liable to do." As a result, Plaintiff contends that the Court may grant specific performance against PennAkem just as it could have against Penn making PennAkem a proper party to the suit. PennAkem had notice of Plaintiff's dispute with Penn. Plaintiff further argues that it has properly pled that PennAkem was the successor-in-interest to Penn. The Federal Rules only require that Plaintiff put PennAkem on notice of Plaintiff's claim that PennAkem is Penn's successor-in-interest. Plaintiff contends that at the very least, PennAkem should remain in the lawsuit until further discovery has taken place.

PennAkem has filed a reply brief in further support of its Motion to Dismiss in which it argues that Plaintiff has failed to plead that PennAkem is Penn's successor-in-interest. Plaintiff has only alleged that PennAkem purchased Penn's assets and that PennAkem is Penn's successor-in-interest. Plaintiff has the burden to plead that an exception to the general rule that a successor-in-interest is not liable for the transferor's liabilities should apply in this case. As for the availability of specific performance, PennAkem argues that the last draft of the Asset Purchase Agreement between Plaintiff and Penn reveals that many of the terms of the proposed transaction remained unsettled. As for the LOI, PennAkem states that the exclusivity required by the LOI had expired before it entered into talks with Penn. The deadline for finalizing a purchase agreement set forth in the LOI was November 28, 2006. At no time before that deadline did Plaintiff ever seek to enjoin Penn from taking any action inconsistent with the LOI. Likewise, Plaintiff never sought to enjoin the transaction between Penn and PennAkem.

Finally, Plaintiff has filed a sur-reply in which it argues that the Court has already ruled

6

that Plaintiff has stated a claim for breach of contract against Penn and for the remedy of specific performance. PennAkem cannot in effect take a second bite at the apple by presenting the same argument that the Court rejected when it denied the first motion to dismiss in this case. The Court should also decline to consider any new arguments and new exhibits presented for the first time in PennAkem's reply brief. Plaintiff argues that the Court should permit more discovery about the negotiations between Penn and PennAkem before it determines that Plaintiff has failed to state a claim against PennAkem.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[14] "A court may dismiss a [claim under Rule 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[15] "The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim."[16] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[17] The Supreme Court

---

[14] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[15] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[16] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[17] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

7

has more recently stated that the Federal Rules "do not require a heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face."[18] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[19]

## ANALYSIS

The Court holds that Plaintiff has failed to state a claim against PennAkem as the successor-in-interest to Penn, and so Plaintiff's claims against PennAkem are dismissed. Plaintiff's Amended Complaint contains the following allegations with respect to PennAkem. In identifying PennAkem as a party to this action, Plaintiff alleges, "PennAkem purchased the assets of Penn in or about July 2008 and is Penn's successor in interest." Am. Compl. ¶ 3. Plaintiff goes on to allege, "PennAkem purchased the assets of Penn after the initial complaint was filed with full knowledge of NOVA's claims against Penn" (*Id*. at ¶ 21) and "PennAkem is the successor-in-interest to Penn, and the Court cannot accord complete relief to NOVA if PennAkem is not a party to this case" (*Id*. at ¶ 21). In its prayer for relief, Plaintiff demands a "decree of specific performance, requiring Penn and PennAkem to carry out the agreement between Penn and NOVA for the sale of Penn's business assets to NOVA, as reflected in the draft Asset Purchase Agreement." *Id*. at 5.

Plaintiff has asserted no cognizable claim against PennAkem in the Amended Complaint other than to argue that PennAkem is the successor-in-interest to Penn. The general rule with respect to successor liability is that a corporation that purchases the assets of another corporation

---

[18] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

[19] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

is not automatically liable for the obligations of the seller.[20]  There are four recognized exceptions to the successor liability rule: (1) where the purchasing corporation expressly or implicitly agrees to assume the selling corporation's liabilities; (2) where the transaction amounts to a consolidation or merger of the two corporations (a *de facto* merger); (3) where the purchasing corporation is a mere continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation.[21]

In order to state a claim for successor liability, a plaintiff must allege both of the following: (1) that a transfer of assets has taken place, and (2) that a state law exception to the general rule regarding successor liability applies.[22]  The Court finds that Plaintiff has properly alleged the first element, that a transfer of assets has taken place.  In two places in the Amended Complaint, Plaintiff referred to PennAkem's purchase of Penn's assets in July 2008.[23]  However, Plaintiff has failed to properly allege that one of the state law exceptions to the general rule applies.  Plaintiff only states in conclusory fashion that PennAkem is the successor-in-interest to Penn.  This is the type of legal conclusion to which the court does not afford liberal review under Rule 12(b)(6).[24]  As for the exceptions, Plaintiff's Amended Complaint is devoid of any

---

[20] *Carrier Corp. v. Piper*, 460 F.Supp.2d 827, 845 (W.D.Tenn. 2006) (J. McCalla) (citing *Signature Combs, Inc. v. United States*, 331 F.Supp.2d 630, 640 (W.D. Tenn. 2004) (J. Donald)).

[21] *Id.*

[22] *Id.*

[23] Am. Compl. ¶¶ 3 & 21.

[24] *Third Nat. Bank in Nashville v. Showbiz Pizza Time, Inc.*, 1995 WL 385118, *4 (6th Cir. 1995) (upholding dismissal pursuant to Rule 12(b)6) of complaint for successor liability

allegation that PennAkem had expressly or implicitly agreed to assume Penn's liabilities. Plaintiff has failed to allege that PennAkem is a mere continuation of Penn or that the parties entered into the transaction fraudulently, in order to escape liability for Penn's obligations. Thus, Plaintiff has pled none of the recognized exceptions to allege that PennAkem is in fact Penn's successor-in-interest.

Based on the facts alleged in the Amended Complaint and the other briefs in this case, it appears to the Court that the only possible exception is the second, namely, that the transaction amounts to a consolidation or merger of the two corporations (a *de facto* merger). In *Carrier Corp. v. Piper*, this Court considered a motion to dismiss for the plaintiff's failure to plead the *de facto* merger exception to the general rule on successor liability. In that case, the Court ruled that the complaint had stated a claim for successor liability by properly pleading the *de facto* merger exception where the complaint contained the following allegations: that the successor had acquired *substantially all* of the assets, including trade names/trade marks, technology/know-how, patents and other intellectual property, and certain obligations and liabilities of the selling corporation; that the selling corporation was required to change its name and filed articles of dissolution; and that the successor continued the selling corporation's business line and manufacturing operations. The successor in *Carrier* moved for dismissal arguing that a *de facto* merger required an exchange of assets for stock and the complaint did not contain such an allegation. The Court concluded that in light of the fact that the *de facto* merger doctrine was not well-developed under Tennessee law, "all of the hallmarks of a *de facto* merger

---

where the plaintiff had offered only legal conclusion that exception to general rule applied) (citations omitted).

need not be present" and that "the absence of asset-for-stock exchange is not fatal."[25]

Applying the same reasoning from *Carrier* to the Amended Complaint in the case at bar, the Court finds that Plaintiff's allegations fail to state a claim for successor liability under the *de facto* merger exception against PennAkem. In comparison to the *Carrier* complaint, Plaintiff's Amended Complaint lacks any allegation that supports even an inference of a *de facto* merger. Plaintiff simply alleges that PennAkem purchased the assets of Penn. Plaintiff has failed to allege which assets PennAkem acquired let alone whether they constituted "substantially all" of Penn's assets. The Amended Complaint makes no mention of how the transaction affected Penn's status, i.e. whether the corporation continued to exist and under what name. There is no allegation that PennAkem continued Penn's business line and manufacturing operations. To be sure there could be other evidences of a *de facto* merger, as the *Carrier* Court recognized, yet Plaintiff has failed to present any of them in its Amended Complaint. Thus, Plaintiff has failed to state a claim against PennAkem as the successor-in-interest to Penn.

## CONCLUSION

Having found no factual allegation in the Amended Complaint that there was a *de facto* merger or any other exceptional circumstance which would impose successor liability on PennAkem, the Court concludes that Plaintiff has failed to state a claim against PennAkem. Therefore, Plaintiff's allegations against PennAkem are dismissed.

**IT IS SO ORDERED.**

---

[25] *Carrier*, 460 F.Supp.2d at 846.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 5th, 2009.